**UNITED STATES of America**

v.

**James Bernard JOHNSON.**

**Crim. No. 72–417.**

United States District Court,
E. D. Pennsylvania.

July 25, 1973.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

F. Emmett FitzPatrick, Philadelphia, Pa., for defendant.

MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

Defendant, James Bernard Johnson, was indicted for conspiracy and bribery

of one James Hartman, Sr., a Blue Shield utilization representative acting on behalf of the United States Department of Health, Education and Welfare in the administration of the Medicare Program, in violation of Title 18, U.S.C. Sections 201(b)(1), (2), (3), 201(c)(2), 201(f) and 371. Upon a trial before this judge and a jury, defendant was found guilty of two (conspiracy and bribery) of the five counts on which he was charged in the indictment. The jury returned a verdict of not guilty on the remaining counts.

This matter is presently before the Court on defendant's motion for judgment of acquittal or in the alternative for a new trial.

*Motion for Judgment of Acquittal*

Viewing the evidence in a light most favorable to the Government, the record establishes the following:

In June of 1971 James Hartman, Sr., a Blue Shield employee engaged in Medicare investigation, had begun an investigation of Dr. Stanford Bazilian's Medicare claims. Dr. Bazilian was allegedly submitting false claims for services under the Medicare Act. In one instance, Dr. Bazilian appeared at the Ponce De Leon Nursing Home with a violinist who played for about a half hour. Upon completion of the performance, Dr. Bazilian obtained the names and Medicare numbers of the patients in the audience. Dr. Bazilian then billed each one of the patients under the Medicare Act for psychiatric treatment. By July 28, 1971, Hartman had completed investigating four or five complaints that had been made against Dr. Bazilian.

On July 28, 1971, Hartman received a telephone call from the defendant, James Bernard Johnson, a fellow employee also engaged in Medicare investigation work at Blue Shield. Johnson stated that Dr. Bazilian was presently visiting him regarding problems which had arisen as a result of Hartman's investigation. Hartman told Johnson about his investigation. He also told Johnson that his investigation had not yet been reported to his superiors. Hartman had it within his power to suppress the results of his investigation at the time of this phone call. Dr. Bazilian came on the line and cried:

I am Dr. Bazilian and I'd appreciate anything you could do. Could you help me? Help me, anything. Please, thousands.

Hartman asked Johnson what he wanted to do, and Johnson replied; "Don't worry about how we are going to do it, but we will just be able to do it." Hartman reported the Johnson-Bazilian telephone call promptly to his superiors. It was decided that Hartman should play along to see what would develop. On August 4, 1971, Dr. Bazilian, Johnson and Hartman met at Johnson's house with Hartman's investigation reports and Bazilian's records. Johnson instructed Hartman to arrive early so that they could privately review Hartman's reports and get together on a price to present to the doctor. Later, at this meeting, Johnson made a demand of $10,000. Subsequent negotiations reduced the $10,000 demand to $5,000. On the evening of defendant's arrest, Dr. Bazilian had given a $1,000 part-payment to Dr. William King, who, in turn, turned over the $1,000 to Johnson. United States v. King, Crim. No. 72–417 (E.D.Pa. July 9, 1973).

Defendant contends that the evidence adduced at trial may have established him guilty of extortion but does not support a conviction for conspiracy and bribery as charged in the indictment. The Defendant contends that Dr. Bazilian paid $1,000 out of fear for his life, predicated upon statements made by Johnson, to wit, that if anything went wrong he (Johnson) could "buy death for $100,000"; that one phone call to a certain friend would buy "broken arms or death"; and that "if anyone squeals he could buy death."

Defendant takes these statements out of context. Any threats reported in this case related to Hartman or Dr. Bazilian's informing to the authorities.

There is no evidence of any threat of violence for non-payment of the bribe. Moreover, there is sufficient evidence in this record to support a finding beyond a reasonable doubt that Dr. Bazilian had volunteered and was willing to pay a bribe prior to the time that any of these threatening remarks were made.

■ Defendant submits no other argument in support of his motion for judgment of acquittal. Viewed in a light most favorable to the Government, there is abundant evidence upon which the jury could find beyond a reasonable doubt that Johnson conspired to and did attempt to bribe a Blue Shield utilization representative acting on behalf of the United States Department of Health, Education and Welfare in the administration of the Medicare program.

*Motion for a New Trial*

Defendant alleges four (4) errors as having the cumulative effect of denying him a fair trial: (1) improperly admitted co-conspirator declarations; (2) a superseding indictment handed down two weeks prior to the trial; (3) the prosecutor's exhibiting to the jury typewritten transcripts of recorded telephone conversations while the tapes were being played in the courtroom; and (4) the failure of the government to prove beyond a reasonable doubt that defendant was not entrapped. These arguments are without merit.

■ 1. *Co-conspirator declarations.* Defendant alleges that it was error to permit testimony to be given as to out-of-court declarations made by defendant's co-conspirators. However, it is well established that if two or more people conspire with each other to commit an unlawful act, the statement of one conspirator to a third person in furtherance of and during the continuance of the common design is admissible in evidence against all the conspirators as an exception to the hearsay rule. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). United States v. Addonizio, 451 F.2d 49 (3rd Cir. 1972). The requisite foundation for the application of the rule requires that a prima facie case of conspiracy be established independent of the declaration itself. This Court made a determination at trial that such a prima facie case had been established by the Government absent any statements of the co-conspirators. As such, the out-of-court declarations were properly admitted.

■ 2. *Superseding indictment.* Defendant makes the argument that he was unduly prejudiced by a superseding indictment handed down two weeks prior to the trial characterizing James Hartman as the recipient of a bribe, whereas the original indictment named him as an "unindicted co-conspirator." Defendant argues that this changed the number of conspirators and his planned defense. But defendant fails to set forth in his brief just how he was prejudiced. The record clearly shows that Hartman was working as an undercover agent for the government. He was not a co-conspirator. The language of the indictment was simply revised to reflect an accurate description of Hartman's role in the case. This change in the language of the indictment in no way changed the evidence which was presented to the jury.

■ 3. *Transcripts of tape recordings.* Defendant argues that the trial judge erred in permitting the jurors to read a government prepared transcript of recorded telephone conversations while the taped conversations were played in the courtroom. Relying upon the authority set forth in the well-reasoned Opinion of Judge Huyett of this district in the case of United States v. Eugene Lawson, 347 F.Supp. 144 (E.D. Pa.), we permitted the use of the transcripts as an aid to the jury's understanding of the taped conversations. As in *Lawson*, supra, the transcripts were not admitted into evidence but were taken from the jury immediately after the playing of the tapes. As stated by Judge Huyett, "[T]he procedure followed provided the most reasonable means of presenting telephonic interceptions to the jury." *Id.* at 150.

■ 4. *Entrapment.* Defendant contends that the government failed to prove beyond a reasonable doubt that defendant was not entrapped. The jury was properly instructed that the burden was on the Government to prove beyond a reasonable doubt that there was no entrapment. The Court charged:

> The burden is on the defendant to bring forth some evidence that the Government induced him, the defendant, to enter into an illegal agreement. This burden must be established only by a preponderance or by a fair weight of the evidence. The burden of proof of showing that there was no entrapment then shifts to the Government and the Government must then prove beyond a reasonable doubt that there was no entrapment and that the defendant was ready and willing to break the law.

There is ample evidence to support the finding by the jury that the government had proven beyond a reasonable doubt that Johnson was not entrapped.

Defendant's motion for a new trial is therefore denied.